**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MYRON D. WATKINS,

        Petitioner,

v.                                   Case No. 10-12025

GREG McQUIGGIN,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitoner Myron Watkins, confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by an attorney, Petitioner challenges his conviction by a jury in Livingston County Circuit Court of four counts of first-degree criminal sexual conduct, *see* Mich. Comp. Laws § 750.520b, and four counts of second-degree criminal sexual conduct, *see id.* § 750.520c. For the reasons that follow, the petition for writ of habeas corpus is will be denied.

**I. BACKGROUND**

In 2004, Petitioner was charged with multiple counts of first-, second-, and fourth-degree criminal sexual conduct against three minors, his stepdaughters, T.B. and V.A., and V.A.'s friend P.R.[1] At Petitioner's trial in March 2005, T.B. testified that Petitioner

---

[1]Because the victims were all minors at the time of the offenses, the court will refer to them by their initials to preserve their privacy.

1

married her mother in 1996, when she was ten years old.  (Trial Tr. vol. II, 39-44, Mar. 10, 2005, Dkt. # 7-5.)  The entire family, including T.B.'s half-sister V.A., moved into Petitioner's home.  (*Id.* at 42-43.)  About a year into the marriage, T.B. testified that Petitioner began "cuddling" with her and giving her back and leg rubs that eventually began to include fondling of her genitals.  (*Id.* at 45-50.)  T.B. testified that these acts occurred usually two to three times per week in the master bedroom while her mother was away at work.  (*Id.* at 48, 51.).  Eventually, Petitioner's acts progressed to digital sexual penetration with T.B.  (*Id.* at 52.)  The digital penetrations began when T.B. was twelve or thirteen years old and continued for about twice a week until she was seventeen.  (*Id.* at 53.)  On other occasions, Petitioner would straddle T.B.'s buttocks and rub his penis against her.  (*Id.* at 55-57.)  At other times, Petitioner would force T.B. to hold his penis and masturbate him until he ejaculated.  (*Id.* at 58-59.)  Petitioner would also go into T.B.'s bedroom and perform oral sex on her.  (*Id.* at 60-61.)  T.B. testified that the oral sex occurred approximately twice a month and lasted until she was seventeen.  (*Id.* at 61-62.)

T.B. testified that during several of these incidents, someone walked in on Petitioner and her.  (*Id.* at 126.)  Petitioner would ask the person to leave the room.  (*Id.* at 126-27.)  V.A. testified that she saw Petitioner lying down next to T.B. in his bedroom while rubbing T.B. beneath her shirt.  (Trial Tr. vol. III, 19, Mar. 11, 2005, Dkt. # 7-6.)  Petitioner ordered V.A. to leave.  (*Id.* at 20.)  P.R. testified that on another occasion she walked into T.B.'s room and observed Petitioner with his hand beneath T.B.'s shirt.  (*Id.* at 66.)  P.R. testified that Petitioner "barked" at her about whether she knew how to knock.  (*Id.*)

T.B. did not initially tell anyone about the sexual abuse, because she was afraid of Petitioner and also feared that reporting the sexual abuse would lead to the break up of the family.  (Trial Tr. vol. II, 64-66.)  T.B. finally told Petitioner in 2003 that the abuse had to stop.  (*Id.* at 67-68.)

On March 19, 2004, when T.B. was seventeen years old, the assistant principal at her high school asked her to come to his office.  (*Id.* at 76-77.)  T.B. initially denied that anything inappropriate was taking place between Petitioner and herself.  (*Id.* at 77.)  T.B. then called her boyfriend, (*id.* at 78), who told T.B. that she needed to report the sexual abuse if she wanted to prevent her sister from going through the same abuse she had, (*id.* at 230).  T.B. returned to the principal and informed him about having been sexually abused by Petitioner.  (*Id.* at 78.)

V.A. testified that in 2002, when she was about twelve years old, Petitioner began touching her buttocks and "cuddling" her.  (Trial Tr. vol. III, 8-9.)  When V.A. became thirteen years old, Petitioner began to rub more on her legs and inner thighs, reaching to about two inches from her "personal area."  (*Id.* at 11-12.)  V.A. also testified about how Petitioner would "flick" her breasts, and that he had done this more than twice.  (*Id.* at 14-15, 25).

V.A. spoke to several friends about Petitioner's actions, including her friend P.R. (*Id.* at 17.)  The friends advised her to report Petitioner to the authorities.  (*Id.*)  V.A. then told her vice principal about the sexual abuse.  (*Id.* at 17-18.)

P.R. was V.A.'s best friend.  (*Id.* at 63.)  P.R. testified that Petitioner repeatedly offered to massage V.A. and that when he massaged her one time "he . . . went up way too far . . . [l]ike in her private area."  (*Id.* at 67.)  P.R. testified that Petitioner also

3

"always touched [V.A.'s] butt and flicked her boobs."  (*Id.* at 68.)  P.R. testified that on one occasion, after flicking and touching V.A., Petitioner came up to P.R. and touched her buttocks.  (*Id.* at 69-70.)

Josephine Watkins was Petitioner's wife at the time of the incidents.  (*Id.* at 168.) Although she never witnessed any sexual misconduct, Ms. Watkins recalled one time when she saw Petitioner and T.B. walk out of her bedroom.  (*Id.* at 170-71.)  On another occasion, Ms. Watkins found T.B.'s clothing on her bedroom floor.  (*Id.* at 171.)  Ms. Watkins indicated that she found this unusual because she did not allow her children into her room.  (*Id.*)

T.B. testified that Petitioner had a heart problem, cardiomyopathy, which she described as an enlarged heart that had been overworked.  (Trial Tr. vol. II, 137.)  T.B. indicated that only 17 percent of Petitioner's heart was working.  (*Id.*)  T.B. acknowledged that Petitioner became easily fatigued, that he couldn't lift more than fifteen pounds, and that he slept a lot more.  (*Id.* at 137-38.)  Ms. Watkins testified that there were no restrictions on sexual activity by Petitioner after his heart condition.  (Trial Tr. vol. III, 173.)  Ms. Watkins, however, acknowledged that she worried about Petitioner's physical condition every time they had sex.  (*Id.* at 221-22.)

The jury found Petitioner guilty of all charges involving T.B. and two of the charges involving V.A.  (Trial Tr. vol. V, 4-5, Mar. 15, 2005, Dkt. # 7-8.)  The jury acquitted Petitioner of one charge involving V.A. and the single charge involving P.R. (*Id.* at 5.)

On direct appeal, Petitioner raised several claims of prosecutorial misconduct based on statements made during the prosecutor's rebuttal closing argument.

4

Petitioner's conviction was affirmed by the Michigan Court of Appeals. *People v. Watkins,* No. 264957, 2006 WL 3734122 (Mich. Ct. App. Dec. 19, 2006) (per curiam). The Michigan Supreme Court denied Petitioner's application for leave to appeal in a form order, stating "we are not persuaded that the question presented should be reviewed by this Court." *People v. Watkins*, 731 N.W.2d 729 (Mich. 2007).

Petitioner subsequently filed a post-conviction motion for relief from judgment in the trial court, *see* Mich. Ct. R. 6.502, claiming his trial counsel had rendered constitutionally ineffective assistance. The trial court denied relief. *People v. Watkins*, No. 04-14377, 04-14378 (Mich. Cir. Ct. Mar. 6, 2009). The Michigan Court of Appeals and the Michigan Supreme Court both denied leave to appeal, finding Petitioner could not meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *People v. Watkins,* No. 296607 (Mich. Ct. App. Mar. 31, 2010), Dkt. # 7-13, at 1; *People v. Watkins*, 787 N.W.2d 123 (Mich. 2010).

Petitioner originally filed a petition for a writ of habeas corpus in this court on May 18, 2010, which the court stayed and held in abeyance pending the Michigan Supreme Court's ruling on his application for leave to appeal the denial of his motion for relief from judgment. After the Michigan Supreme Court issued its ruling, Petitioner filed an amended petition in this court seeking relief on the claims he raised on direct appeal and in his post-conviction motion:

    I.     Mr. Watkins's trial attorney, Ronald Plunkett, was ineffective in failing to investigate and pursue a defense based on Mr. Watkins's severe cardiac disability, and there is newly discovered evidence in the form of criminal cases and Attorney Discipline Board records that show that Mr. Plunkett was addicted to cocaine, which caused him to neglect his clients.

II.   The actions of the assistant prosecutor in closing rebuttal argument [are] sufficiently prejudicial that they deprived Petitioner of his constitutional right to a fair trial where the assistant prosecutor 1) testified to facts not in evidence, 2) attacked defense counsel for making an objection which the court had already sustained, 3) invoked the utterly irrelevant, recent Atlanta courthouse shootings[,] and 4) referenced her own motherhood.

(Supplemental Br. Supp. Pet. Habeas Corpus 22, 31, Dkt. # 9.)

## II.  STANDARD

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when a state court decision unreasonably applies the law of the Supreme Court to the facts of a prisoner's case.  *Id.*

6

at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citation omitted) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).  Furthermore, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported[,] or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

7

## III.  DISCUSSION

### A.  Procedural Default

Respondent claims that Petitioner's first claim of ineffective assistance of counsel and a portion of his second claim of prosecutorial misconduct are procedurally defaulted for various reasons.  When a state court rules that a prisoner has defaulted his federal claims based on "an independent and adequate state procedural rule," a federal court is likewise barred from reviewing those claims pursuant to a habeas petition, unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The narrow exception to this rule that allows review when "the habeas petitioner can demonstrate a sufficient probability that [the] failure to review his federal claim will result in a fundamental miscarriage of justice," *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)—for example when "a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier*, 477 U.S. 478, 496 (1986)—is not at issue here.

"[A] procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 489 U.S. 320, 327 (1985)). Where there has been one reasoned state court judgment enforcing a state procedural bar, it is presumed that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

8

### 1.  Ineffective-Assistance-of-Counsel Claim

Respondent contends that Petitioner's first claim of ineffective assistance of counsel is procedurally defaulted because Petitioner presented this claim for the first time in his post-conviction motion without showing cause and prejudice for failing to raise it in his appeal of right.  Michigan Court Rule 6.508(D)(3) provides that a court may not grant post-conviction relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."  Mich. Ct. R. 6.508(D)(3)(b)(i).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal in form orders that reference Rule 6.508(D) in a manner that is ambiguous as to whether they invoke subsection (D)(3)'s procedural bar or deny relief on the merits.  *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). Therefore, the court looks to the trial court's order as "the last reasoned state court opinion" in order to "determine the basis for the state court's rejection" of Petitioner's ineffective-assistance-of-counsel claim.  *Id.*

In denying Petitioner's motion for relief from judgment, the trial court cited the "good cause" and "actual prejudice" standard of Rule 6.508(D)(3), relied heavily on a Michigan Supreme Court case interpreting this standard, *see People v. Reed*, 535 N.W.2d 496 (Mich. 1995), and ultimately concluded that Petitioner was not entitled to relief because he "ha[d] not demonstrated the requisite 'good cause' or 'actual

9

prejudice' under MCR 6.508(D)." *Watkins*, slip. op. at 5.  Thus, the trial court clearly

rejected Petitioner's ineffective-assistance-of-counsel claim based on the procedural bar

in Rule 6.508(D)(3). *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007);

*Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  The fact that the trial judge

may have also discussed the merits of Petitioner's claim does not alter this analysis.

*See Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999); *cf. McBee v.

Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991) ("[A] federal court need not reach the

merits of a habeas petition where the last state-court opinion clearly and expressly

rested upon procedural default *as an alternative ground*." (citing *Harris v. Reed*, 489

U.S. 255, 264 n.10 (1989))).  Petitioner's ineffective-assistance-of-trial-counsel claim is

procedurally defaulted.

In an attempt to establish cause to excuse his procedural default, Petitioner

argues here, as he did to the trial court, that his appellate counsel rendered

constitutionally deficient representation by failing to raise his ineffective-assistance-of-

trial-counsel claim on direct appeal.  Attorney error rising to the level of ineffective

assistance of counsel can establish cause that may allow this court to look past

Petitioner's procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  To make

such a showing, Petitioner must demonstrate that appellate counsel's failure to pursue

his ineffective-assistance claim amounted to deficient performance that prejudiced the

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

It is well established that a criminal defendant does not have a constitutional right

to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*,

463 U.S. 745, 751 (1983).  As the United States Supreme Court has explained: "For

10

judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Id.* at 754; *see also id.* at 753 ("A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular'—in a verbal mound made up of strong and weak contentions." (citation omitted)). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (citing *Jones*, 463 U.S. at 751).

"[I]t is . . . possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (quoting *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995)).

Petitioner has not shown that appellate counsel's omission of the ineffective-assistance-of-trial-counsel claim on direct appeal was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 490. Counsel filed a forty-nine page appellate brief that raised five prosecutorial misconduct claims. (*See* Def.-Appellant's Br. on Appeal, *People v. Watkins*, No. 264957, 2006 WL 3734122 (Mich. Ct. App. Dec. 19, 2006), Dkt. # 7-11, at 9-66.) Appellate counsel could have reasonably decided that these five prosecutorial misconduct claims, rather than other potential claims like ineffective assistance of trial counsel, were the strongest arguments available to Petitioner on appeal. For the reasons stated by the trial court in its discussion on the merits of Petitioner's ineffective-assistance-of-trial-counsel claim, that claim was not a "dead-bang winner." *See Watkins*, slip op. at 2-4. Accordingly, Petitioner has failed to establish cause for his procedural default of failing to raise it on direct review, and it is unnecessary for the court to reach the prejudice issue. *See Smith v. Murray*, 477 U.S. at 533. This court is barred from reviewing Petitioner's procedurally defaulted ineffective-assistance-of-counsel claim.

### 2. *Prosecutorial Misconduct Claims*

Respondent next contends that Petitioner's second and third prosecutorial misconduct claims—that the prosecutor improperly attacked defense counsel for making an objection sustained by the trial court and improperly referenced a recent courthouse shooting in Atlanta—are procedurally defaulted because defense counsel did not object to them at trial.[2] The state procedural rule at issue here is Michigan's

---

[2]Respondent also asserts that Petitioner has raised a fifth prosecutorial misconduct claim involving the prosecutor crying and showing emotion during her

contemporaneous-objection rule, which requires a criminal defendant to object to or request a curative jury instruction regarding prosecutorial misconduct during trial in order to preserve the issue for appeal. *People v. Brown*, 755 N.W.2d 664, 679 (Mich. Ct. App. 2008).

In this case, the Michigan Court of Appeals—whose opinion the court looks to as the last reasoned state-court judgment, *see Ylst*, 501 U.S. at 803—clearly indicated that, by failing to object at trial to these two instances of prosecutorial misconduct, Petitioner failed to preserve these claims. As a result, the court of appeals reviewed them for plain error only. *See Watkins*, 2006 WL 3734122, at *1-*2. "[A] state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1002 (2011). Instead, this court should view the plain-error review employed by the court of appeals as enforcement of the state procedural bar. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Thus, Petitioner's second and third prosecutorial misconduct claims are procedurally defaulted.

Petitioner has offered no reasons for his failure to properly preserve his second and third prosecutorial misconduct claims. Although, as discussed, ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *Edwards*, 529 U.S. at 451-52. Petitioner

---

closing argument. Respondent argues that this claim is also procedurally defaulted. Although Petitioner raised this prosecutorial misconduct claim in the state courts, and the claim was, in fact, deemed unpreserved and rejected by the Michigan Court of Appeals, Petitioner does not appear to present the claim to this court. If he was, it would be procedurally defaulted for the reasons discussed in reference to his second and third prosecutorial misconduct claims.

never raised a claim in the Michigan courts that trial counsel was ineffective for failing to object to these instances of prosecutorial misconduct, so ineffective assistance of counsel cannot provide cause to excuse Petitioner's procedural default. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).  Again, because Petitioner has not established cause, the court need not reach the prejudice inquiry.  *See Smith v. Murray*, 477 U.S. at 533.  The court cannot reach the merits of Petitioner's second and third prosecutorial misconduct claims due to his procedural default.

## B.  Undefaulted Prosecutorial Misconduct Claims

Petitioner's remaining claims involve two alleged instances of prosecutorial misconduct that he argues deprived him of a fair trial.  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004); *see also Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) ("[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" (second alteration in original) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974))).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly*, 416 U.S. at 643); *see also Parker v. Matthews*, --- U.S. ----, 2012 WL 2076341, at *5 (June 11, 2002).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (citing *Hayton v.*

14

*Egeler*, 555 F.2d 599, 604 (1977)).  The Court must focus on "'the fairness of the trial,

not the culpability of the prosecutor.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.

1997) (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

### 1.  Statement of Facts Not in Evidence

Petitioner first claims that the prosecutor improperly referenced facts not in

evidence when she cited a statistic related to the presence or absence of physical

evidence in sexual assault cases.  The trial court sustained defense counsel's objection

to this statement and advised the jury, "That's not part of the evidence."  (Trial Tr. vol.

IV, 77, Mar. 14, 2005, Dkt. # 7-7.)  The trial court later instructed the jurors that "[t]he

lawyers' statements and arguments are not evidence."  (*Id.* at 92.)

The Michigan Court of Appeals denied Petitioner relief on this claim of

prosecutorial misconduct:

> Defendant's first claim of prosecutorial misconduct, which was
> properly preserved, is that the prosecutor "testified" during her rebuttal
> closing by arguing facts that were not in evidence. Prosecutors may not
> make statements that are unsupported by the facts in evidence. [*People v.
> Ackerman*, 669 N.W.2d 818, 828 (Mich. Ct. App. 2003).] In this case, we
> agree that the prosecutor argued facts outside of the evidence when she
> cited a statistic related to the presence of physical evidence in sexual
> conduct cases that was not introduced in order to refute an argument made
> by defense counsel. Nonetheless, the error was cured by the trial court's
> sustaining the defense objection and providing a curative instruction.
> Defendant presents no evidence to suggest that the error was outcome
> determinative. *See* [*People v. Lukity*, 596 N.W.2d 607, 613 (Mich. 1999)].
> And, defendant does not argue on appeal, nor is it apparent from the record,
> that the curative instruction was insufficient to cure the prosecutor's error.
> Therefore, we hold that the defendant has failed to meet his burden of proof
> that the challenged statement deprived him of a fair trial.

*Watkins*, 2006 WL 3734122, at *1.

This decision is not an unreasonable application of the standard promulgated by the Supreme Court in *Donnelly* and *Darden*. The prosecutor's unwarranted reference to a crime statistic was an isolated remark, *see Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000), and the trial court instructed the jury to ignore it, *cf. United States v. Buckley*, 934 F.2d 84, 89 (6th Cir. 1991) (holding district court did not abuse its discretion in denying defendant's motion for mistrial following prosecutor's inquiry of witness regarding certain physical evidence that district court had previously excluded, where witness did not answer question before defense counsel objected, district court instructed jury to ignore question, and jury never saw unduly prejudicial piece of evidence). Moreover, the trial court also instructed the jury that counsel's closing argument was not evidence. *See Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003). Under these circumstances, the Michigan Court of Appeals reasonably concluded that the prosecutor's improper statement did not render Petitioner's trial fundamentally unfair.

### 2. Reference to the Prosecutor's Motherhood

In his final prosecutorial misconduct claim, Petitioner contends that the prosecutor improperly appealed to the jury's sympathy by informing them that she was "a mom" and thus tried to be kind to child sexual assault victims. (Trial Tr. vol. IV, 83.) The trial court overruled defense counsel's objection to this remark after the prosecutor indicated she was refuting defense counsel's argument that she was putting on "a show." (*Id.* at 83-84.) Later on, the trial court also informed the jurors that they "must not let sympathy or prejudice influence [their] decision." (*Id.* at 90.)

As with Petitioner's other preserved claim of prosecutorial misconduct, the Michigan Court of Appeals ruled against Petitioner on this claim:

16

Defendant's fourth claim of prosecutorial misconduct, which was properly preserved, is that the prosecutor improperly appealed to the jury's sympathy by telling them that she is "a mom" and, therefore, tries to be kind to child victims. It is improper for a prosecutor to use arguments that only appeal to the jury's sympathy. [*People v. Hedelsky*, 412 N.W.2d 746, 748 (Mich. Ct. App. 1987).] Nonetheless, as the lower court observed, the prosecutor's statements were not an improper plea for sympathy. The challenged comment was made in response to defense counsel's accusation that the prosecutor was staging a show for the jury's benefit. We therefore find that defendant has not shown that the prosecutor's remarks deprived him of a fair trial.

*Watkins*, 2006 WL 3734122, at *2.

The Michigan Court of Appeals did not unreasonably apply the relevant Supreme Court precedents in denying Petitioner relief for this alleged prosecutorial misconduct. As the court of appeals reasoned, the prosecutor's remark, taken in context, was a response to arguments made by defense counsel and not an improper appeal to the jury's sympathy. To the extent that this isolated statement did invoke the jurors' emotions, any prejudice to Petitioner was mitigated by the trial court's instruction that they must base their verdict on the evidence, not their sympathies or prejudices. *See Cockream v. Jones*, 382 F. App'x 479, 486 (6th Cir. 2010) (citing *Byrd*, 209 F.3d at 532); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999). "[E]ven if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy before the prosecutor made any of these comments." *Millender v. Adams*, 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002) (citing *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000)). Petitioner is not entitled to habeas relief.

## IV.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 at 327 (citing *Slack*, 529 U.S. at 484).  When a court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484-85.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims.  In the court's view, reasonable jurists could not debate the correctness of either the court's resolution of Petitioner's constitutional claims or the court's procedural rulings.  The court declines to issue Petitioner a certificate of appealability.

**V. CONCLUSION**

IT IS ORDERED that Petitioner Myron Watkins's amended petition for writ of

habeas corpus [Dkt. # 4] is DENIED.

This court DECLINES to issue a certificate of appealability.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 29, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 29, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\10-12025.WATKINS.Deny2254.db.set.wpd